## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:15-cv-00250-MR
## [CRIMINAL CASE NO. 1:12-cr-00025-MR-DLH-1]

| | | |
|---|---|---|
| **DEBORAH LEE TIPTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

This matter is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1]; the Government's Response [Doc. 4]; and Petitioner's Reply [Doc. 5].

## I.    BACKGROUND

Pro se Petitioner Deborah Lee Tipton, a math and special education teacher at The Mountain Community School in Hendersonville, North Carolina, had an extramarital affair with Chad Hamby, the school's principal, from approximately 2004 through 2011.  [Criminal Case No. 1:12-cr-00025-MR-DLH-1 ("CR"), Doc. 68 at ¶¶ 9, 14: PSR].  During their affair, Petitioner and Hamby often discussed sexual fantasies, including rape, bondage, and having sexual relations with young girls.  [Id. at ¶¶ 14-15].  In September

2011, at Hamby's request, and in an attempt to arouse him and further their relationship, Petitioner twice videotaped her 11-year-old daughter naked in the shower and sent the videos to Hamby. [Id. at ¶¶ 16, 19, 22-23; Civil Case No. 1:15-cv-00250-MR ("Civ."), Doc. 2 at 4]. Hamby recalled that Petitioner sent him a message indicating that she was going to send him "something," and then he received and viewed the two videos before deleting them. [CR Doc. 68 at ¶ 19].

In one of the videos, Petitioner repeatedly aims the camera and zooms in on her daughter's genitalia and convinces her daughter to pull her labia apart under the guise of "seeing her development and her pubic hair." [Id. at ¶ 11]. The video also contains shots of her daughter's breasts. In a second, similar shower video, Petitioner focuses the camera only on the daughter's vagina and briefly on her breasts. [Id.]. Petitioner's voice is heard throughout the video and, at one point during the video, Petitioner flips around the camera and captures her own face on the video. [Id.]. In addition, Petitioner is heard on the video making a comment that is clearly directed to Hamby, thereby showing that the video was created with the intent that it be distributed to him and that the distribution was for the purpose of sexual gratification. [CR Doc. 93 at 35, 68; Gov. Exs. 1A, 1B (transcripts of audio recordings)].

Several months later, in February 2012, after Petitioner had separated from her husband, Joel Tipton (Joel), he found the videos of their daughter on Petitioner's flip video camera and determined that she had sent the videos to Hamby's email address. [CR Doc. 68 at ¶¶ 9-10]. Joel notified his divorce attorney, who then notified the Department of Social Services (DSS), and an investigation and prosecution ensued. [Id. at ¶ 10].

When confronted by investigators, Petitioner admitted to making the videos and sending at least one to Hamby, but she tried to excuse the conduct by explaining that "her daughter wanted to view the pictures of her pubic hair and private parts." [Id. at ¶¶ 22-23]. Petitioner was arrested and charged in state court with felony, first-degree sexual exploitation of a minor. [Id. at ¶ 24]. Investigators also interviewed Hamby, who admitted to receiving and viewing the videos. [Id. at ¶ 19]. He was eventually convicted of receipt of child pornography. [Id. at ¶ 29].

Petitioner was subsequently charged in federal court with producing a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) (Count One); transporting a visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(1) and (b) (Count Two); and possessing a visual depiction of a minor engaged

in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b) (Count Three).  [CR Doc. 1: Indictment].

Although Petitioner originally was appointed counsel, she retained Jack W. Stewart, Jr., as counsel in May 2012, and Frank B. Jackson entered an appearance as co-counsel in July 2012.  [CR Docs. 15, 30].  Defense counsel filed numerous pre-trial motions, including a motion to suppress; a motion for leave to file pre-trial motions; a motion to disclose documents; a motion for independent forensic examination of computer hardware, software, and visual images; a motion for discovery; a motion for privacy/protective order; a motion for admission of criminal conviction; a motion in limine; a motion to dismiss; a request for disclosure of information regarding expert witnesses; and a motion to compel.  [CR Docs. 16, 18, 19-21, 24, 33-35, 43, 45-46].  The motion to dismiss included the argument that there was insufficient evidence of intent to support the offenses.  [See CR Docs. 43-44].

Rather than proceeding to trial, Petitioner agreed to plead guilty to the distribution and possession counts (Counts Two and Three), in exchange for which the Government agreed to dismiss the production count (Count One).  [CR Doc. 48: Plea Agreement].  The plea agreement provided that the statutory minimum was five years of imprisonment, that the statutory

maximum was twenty years, and that any estimate of sentence was a prediction, rather than a promise. [Id. at ¶¶ 3, 5]. The parties agreed to jointly recommend: that the cross reference to U.S.S.G. § 2G2.1 should be applied because the offense involved "causing, transporting, or permitting a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct"; that the base offense level should be 32; that a four-level enhancement should be applied because the victim was under 12; that a two-level enhancement should be applied because the offense involved distribution; and that a two-level enhancement should applied because Petitioner was the minor's parent. [Id. at ¶ 6]. The Government agreed to recommend the full, three-level reduction for acceptance of responsibility, provided that Petitioner fully demonstrated responsibility for her offense and relevant conduct. [Id.]. The parties agreed that each could seek a departure or variance. [Id.]. Petitioner also agreed to waive the right to challenge her conviction or sentence on appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. [Id. at ¶¶ 17-18].

At the plea hearing, the Court reviewed the elements of each offense with Petitioner, including the requirement that she did such acts "knowingly, willfully, intentionally, and unlawfully." [CR Doc. 94 at 11: Plea Tr.].

Petitioner stated that she understood this.  [Id.].  Petitioner also stated that she understood the statutory minimum term of imprisonment was five years and the statutory maximum was twenty years.  [Id. at 7-8].  She indicated that she understood the Guidelines, as well as the fact that the Court could impose a sentence higher or lower than the Guidelines range.  [Id. at 13-14].

Petitioner affirmed that she was pleading guilty because she had committed the acts described in Counts Two and Three of the Indictment, that her plea was voluntary, and that no one had threatened her or made any promises outside of the plea agreement to induce her to plead guilty.  [Id. at 16].  She confirmed her assent to the terms of the plea agreement, including the waiver of appellate and post-conviction challenges.  [Id. at 22].  Petitioner also testified that she had had ample time to discuss possible defenses with her attorney and that she was entirely satisfied with his services.  [Id. at 22-23].  The Court accepted her plea as being knowingly and voluntarily made.  [Id. at 24].

Prior to sentencing, a probation officer prepared a pre-sentence report (PSR) that calculated Petitioner's total offense level as 37.  [CR Doc. 68 at ¶¶ 45-48, 54-56: PSR].  This corresponded to the recommendations in the plea agreement.  Given her criminal history category of I, the advisory guidelines range was 210-262 months of imprisonment.  [Id. at ¶ 89].

Counsel filed numerous objections to the PSR, arguing, inter alia, that Petitioner had taken the videos at her daughter's request; that she thought that she had deleted the videos; that the videos were later sent to Hamby, who stated that Petitioner would not have sent them if he had not asked for the videos; that her daughter was traumatized more from being separated from her mother than from the videos; that Petitioner should receive a lower sentence because she was not a pedophile; and that she was unlikely to be a recidivist.  [See CR Docs. 71, 76].

Counsel also filed a motion for a downward departure, asserting that it was possible that Petitioner had sent the videos by mistake due to her inexperience in using the flip camera, that the videos were not distributed for monetary gain, that the videos were intended for educational use, and that Petitioner was a person who was anxious to please, but was unlikely to pose a risk of being a sex offender.  [CR Docs. 73-74].  Additionally, counsel submitted a sentencing memorandum and numerous exhibits, including Petitioner's psychiatric evaluation, a social/emotional assessment, and a psychosexual evaluation.  [See CR Docs. 71-72, 74].

Sentencing took place on September 18, 2013.  At the hearing, Petitioner reaffirmed the responses she gave at the Rule 11 hearing, including her admission that she is guilty of the offenses to which she

pleaded and her statement that her plea was voluntary. [CR Doc. 93 at 5-8: Sent. Tr.]. The Court commented on the number of documents submitted for sentencing, citing a "multitude of objections" to the PSR, Petitioner's motion for a downward departure, Petitioner's sentencing memorandum, as well as letters submitted on Petitioner's behalf. [Id. at 3]. Petitioner also submitted a motion for a downward variance. [Id. at 4]. Petitioner stipulated to the factual basis for the offense as set forth in the PSR. [Id. at 8]. She also stated that she had had an opportunity to review the PSR with her attorney and that she understood its contents. [Id. at 9].

Much of the discussion at sentencing centered on Petitioner's intent and whether she had accepted responsibility for her offense. On that issue, defense counsel stated that Petitioner did not deny, and had never denied, the recording, possession, or transmission/distribution of the video. [Id. at 10-15]. Defense counsel stated that Petitioner was not maintaining that the videos were sent by some other person, but rather that the videos must have been sent with other transmissions that were made to Hamby. [Id. at 16-21]. The Government argued that if Petitioner was asserting that she had accidentally sent the videos, then she was not admitting to the knowledge element. [Id. at 22]. The Government argued that Petitioner's assertions that she thought that she deleted the videos and that the videos were not

sexual indicated that she had not accepted responsibility for her conduct. [Id. at 22-23]. Defense counsel again stated that Petitioner admitted that she knowingly transmitted the videos to Hamby, and she admitted that the videos showed a child engaged in sexually explicit conduct. [Id. at 23-24]. He also stated that one of the reasons that Petitioner pleaded guilty was to avoid any further trauma or embarrassment to her daughter. [Id. at 24]. Although noting that it was a difficult question, the Court determined that Petitioner had accepted responsibility for her offense. [Id. at 25-26].

The Government then presented testimony from John Wydra, a special agent with the Federal Bureau of Investigation. [Id. at 29]. Wydra testified that Hamby had told him that when he learned that the shower video existed, he asked Petitioner to send it to him. [Id. at 33]. Hamby said that when he received a text message from Petitioner saying that she had a surprise for him, he knew what the video was going to be. [Id. at 32]. According to Hamby, Petitioner had said that "she wanted to be there when he watched it so that she could sit on his lap and feel him get hard." [Id. at 34]. The subject line sent with the video said, "Enjoy." [Id.]. Hamby indicated that the purpose of asking for the video to be sent to him was for his sexual gratification and to feed their fantasies about children. [Id.]. According to Wydra, Petitioner indicated during her interview that she sent the video with the title "Enjoy."

[Id.].  The videos, transcripts of the videos, a transcript of Petitioner's interview, and a transcript of Hamby's deposition were admitted into evidence.  [Id. at 34-36, 48].

Defense counsel established on cross-examination that the forensic examination of Petitioner's electronic devices had not shown any evidence of fantasy discussions of minors or any other images of minors.  [Id. at 37-40, 44].  Defense counsel sought a downward departure based on substantial assistance to Hamby's prosecution and aberrant behavior, as well as a downward variance based on the 18 U.S.C. § 3553 factors.  [Id. at 49-63].  As part of her allocution, Petitioner apologized for her behavior.

The Court sentenced Petitioner to 216 months of imprisonment, noting that the offense involved the manipulation of a child, as well as a breach of the sacred trust between a parent and child, and that Petitioner did not "seem to have come to grips with the criminality of her actions."  [Id. at 79-85].

Petitioner appealed, arguing that her sentence was unreasonable, that the Government had committed prosecutorial misconduct by introducing certain evidence at sentencing and by making allegedly inaccurate factual statements, and that the Government had breached the plea agreement by relying at sentencing on conduct underlying the dismissed count.  United States v. Tipton, 581 F. App'x 188 (4th Cir. 2014).  The Fourth Circuit

dismissed Petitioner's challenge to her sentence, finding that it was barred by her appeal waiver, which was knowingly and voluntarily entered. Id. at 189. The Fourth Circuit also held that there was no breach of the plea agreement, because the Government was free "[to use] Tipton's acts of producing child pornography as part of its argument at sentencing," and that she had not established prosecutorial misconduct. Id. at 188-89.

Petitioner placed her present petition in the prison system for mailing on November 3, 2015, and it was stamp-filed in this Court on November 9, 2015. [Doc. 1 at 12]. Petitioner filed a supporting memorandum on December 14, 2015. [Doc. 2]. In her motion to vacate and supporting memorandum, Petitioner argues that she received ineffective assistance of counsel before her guilty plea, at sentencing, and on appeal. The Government filed a Response on February 19, 2016, opposing Petitioner's motion. [Doc. 4]. Petitioner filed a Reply on March 14, 2016. [Doc. 5].

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that

the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.  DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"  Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails to meet this burden, a "reviewing court need not even

consider the performance prong." <u>United States v. Rhynes</u>, 196 F.3d 207, 232 (4th Cir. 1999), <u>opinion vacated on other grounds</u>, 218 F.3d 310 (4th Cir. 2000).

Finally, to demonstrate prejudice in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." <u>United States v. Lemaster</u>, 403 F.3d 216, 221-22 (4th Cir. 2005).

### A. Petitioner's allegations of pre-plea ineffective assistance.

Petitioner raises five grounds of ineffective assistance of counsel that she contends occurred before her guilty plea. [Doc. 1 at 4]. Specifically, she contends that her attorney: (1) failed to conduct an independent and adequate pre-trial investigation; (2) failed to file any substantive pre-trial

motions; (3) failed to properly inform her of the consequences of pleading guilty versus going to trial and what the maximum sentence would be if she proceeded to trial; (4) failed to properly communicate with her, particularly as to discovery, so that she could make an informed decision whether to plead guilty or proceed to trial; or (5) failed to negotiate a more favorable plea agreement, such as one with a specific sentence. [Id.]. The Court will discuss each claim in turn.

### 1. Petitioner's claims relating to counsel's pre-trial motions and counsel's failure to negotiate a more favorable plea agreement.

Petitioner contends that counsel failed to bring various pre-trial motions and also failed to negotiate a more favorable plea agreement for Petitioner. For the following reasons, both of these claims were waived when Petitioner entered her guilty plea.

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Ineffective assistance of counsel claims based on pre-plea conduct that does not affect the voluntariness of the decision to plead guilty is such a non-jurisdictional defect. See United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); accord

<u>Moussaoui</u>, 591 F.3d at 279 (holding that arguments alleging pre-plea Sixth Amendment violations were "not cognizable" because the defendant's guilty plea had waived them); <u>Fields v. Att'y Gen. of Md.</u>, 956 F.2d 1290, 1296 (4th Cir. 1992) (holding that a guilty plea waived a claim of the denial of constitutionally required counsel "that occurred prior to" the guilty plea and was "unrelated to it"). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." <u>Burket v. Angelone</u>, 208 F.3d 172, 190 (4th Cir. 2000) (citing <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)).

Here, Petitioner contends that counsel provided ineffective assistance by not filing motions for a change of venue; for <u>Brady</u>/<u>Giglio</u> material; to compel agents to preserve rough notes; for the identity of confidential informants; to dismiss for want of sufficiency; to obtain the grand jury testimony; and for an independent mental evaluation. [Civ. Doc. 2 at 22-23: Memorandum]. She asserts that such motions were necessary to evaluate the strengths and weaknesses of the Government's case and to determine whether to proceed to trial. [<u>Id.</u> at 23-24].

While Petitioner contends that such motions were necessary to evaluate the strength of the Government's case, she provides no evidence to support this assertion, nor does the record show such a basis. Thus, even

if such were a cognizable claim, it would fail. Petitioner has shown neither deficient performance, nor prejudice, since she does not identify what evidence any of these motions would have revealed that would have made it objectively reasonable for her to proceed to trial. See Strickland, 466 U.S. at 687-88, 694.

Further, counsel's alleged failure to negotiate a more favorable plea agreement does not affect the voluntariness of Petitioner's decision to plead guilty to the plea agreement offered. See Burket, 208 F.3d at 190. Thus, this claim is also waived by her guilty plea. See Moussaoui, 591 F.3d at 279. Additionally, Petitioner had no right to a plea agreement, see Weatherford v. Bursey, 429 U.S. 545, 561 (1977), and she has not shown any deficient performance or prejudice, where the plea agreement that counsel negotiated resulted in the dismissal of Count One. This reduced her mandatory minimum sentence from 15 years to 5 years and reduced the statutory maximum sentence from 30 years to 20 years. See 18 U.S.C. § 2251(a). Additionally, the three-level reduction for acceptance of responsibility that Petitioner obtained by pleading guilty reduced her guidelines range from 292-365 months of imprisonment to 210-262 months of imprisonment. Because of the strong evidence against Petitioner, her desire to avoid putting her daughter through the additional trauma of a trial, and the reduction in

sentence that she obtained through the plea agreement, it would not have been objectively reasonable for Petitioner to proceed to trial.  See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012); United States v. Santiago, No. 14-6449, 2015 WL 9288220, at **4-5 (4th Cir. Dec. 22, 2015) (unpublished) (holding that "when the Government's case is strong, a defendant faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial").  Therefore, Petitioner's first two allegations of ineffective assistance are dismissed as waived by Petitioner's guilty plea and are, alternatively, without merit.

### 2.     Petitioner's claim that counsel's pre-trial investigation was inadequate.

Petitioner also contends that counsel was ineffective because they failed to conduct a proper pre-trial investigation into Petitioner's case. Petitioner argues that counsel merely relied on the Government's case file and discussions with the prosecutor, rather than independently investigating the facts of her case, and that counsel did not provide her with the Government's discovery.  [Doc. 2 at 19-23].  She asserts that, in addition to consulting a forensic analyst, counsel should have also hired a private investigator to investigate her case and that they should have interviewed witnesses.  [Id. at 19].  Petitioner argues that the Government's case was weak because the main witnesses were her ex-husband Joel (who was in a

custody dispute with her), Hamby (the man to whom she sent the videos), and the investigating agents. [Id. at 21]. She speculates that if counsel had investigated the case, they might have been able to prove that her ex-husband Joel was lying, and Petitioner might have been found not guilty. [Id.].

Petitioner asserts that Joel could have been called to refute Agent Wydra's testimony. [Id. at 21-22]. She argues that Joel was the only person who downloaded and copied the videos. [Id. at 22]. She contends that if counsel had adequately investigated her case, "there is a reasonable probability that she would have proceeded to trial." [Id. at 21]. Petitioner also asserts that her plea was unknowing and involuntary because if she had been given discovery there is a reasonable probability that she would have proceeded to trial "because she never had any criminal intent." [Id. at 24].

Petitioner has not shown deficient performance. She admits that counsel reviewed the Government's file and hired a forensic analyst to examine the electronic evidence. Her entire assertion of deficiency relies on speculation that counsel *might* have been able to prove that Joel was lying. Conclusory allegations, however, are insufficient to support a § 2255 claim. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory

allegations), <u>cert. denied</u>, 135 S. Ct. 47 (2014).  Additionally, Petitioner's arguments ignore the fact that, regardless of what her ex-husband Joel stated, Hamby admitted to requesting, receiving, and viewing the videos. <u>See</u> [CR Doc. 68 at ¶¶ 16, 18-19].  Most importantly, however, Petitioner admitted to investigators that she sent at least one of the videos to Hamby, [<u>Id.</u> at ¶¶ 22-23], and Petitioner is heard on the video making a comment that is clearly directed to Hamby, indicating that she created the video for the purpose of sending it to Hamby [CR Doc. 93 at 35, 68; Gov. Exs. 1A, 1B]..  It would not have been objectively reasonable for Petitioner to proceed to trial, given that her voice and face are on the videos, she admitted to making them, she admitted to sending one of the videos, and Hamby admitted to receiving two of the videos.  In other words, the evidence against Petitioner was simply overwhelming.  Again, by pleading guilty, she received a reduction for acceptance of responsibility and avoided the 15-year mandatory minimum sentence and 30-year maximum sentence associated with Count One, which was dismissed as part of the plea agreement.  She also obtained a three-level reduction for acceptance of responsibility that she would not have received had she proceeded to trial.  Further, she saved her daughter from the trauma of having to endure a trial, which she admitted was one of her goals.

Additionally, although Petitioner argues that she did not have any criminal intent, the issue of intent was clearly discussed in a pretrial motion, at the plea hearing, and at sentencing. She specifically admitted at the plea hearing and at sentencing that she had the requisite intent to commit the offenses. Moreover, her intent was shown by sending Hamby a message saying that she had a surprise for him, titling the message, "Enjoy," and telling him that she wanted to be there when he opened it in order to feel his arousal. [CR Doc. 93 at 32-34]. Petitioner has not shown that additional discovery would have revealed any evidence of her lack of criminal intent, nor that any evidence would have overcome the evidence showing her intent. Therefore, she has shown neither deficient performance nor prejudice with respect to counsel's investigation. See Strickland, 466 U.S. at 687-88, 694; Fugit, 703 F.3d at 260.

### 3. Petitioner's assertion that counsel's ineffective assistance rendered her guilty plea involuntary.

Petitioner next argues that counsel failed to communicate with her adequately during the plea process, rendering her plea involuntary. [Doc. 2 at 17-18]. She contends that counsel did not adequately review the plea agreement with her, did not explain her prospects for success, and advised her that if she entered into the plea agreement she would not be sentenced to more than ten years because Count One would be dismissed. [Id. at 18;

26]. She argues that counsel advised her that she had to plead guilty, that a trial would be very stressful and harmful to her daughter, that because of the media she could not receive a fair trial, and that if she proceeded to trial the Government would seek a 30-year sentence. [Id. at 18; 24-28].

According to Petitioner, counsel quickly read over the plea agreement, skimming over several parts, and told her that she needed to sign it right away, but that she would have four weeks to review it before appearing in court. [Id. at 26]. She contends that she wanted to consult with others regarding the agreement, but she was called to court the next morning for the plea hearing. [Id.]. She argues that counsel's failure to inform her that Count One could be used as relevant conduct and that she could still face a sentence of more than 15 years resulted in her plea being coerced. [Id. at 26-27]. She contends that counsel knew that she did not make the videos for Hamby, that Hamby was lying, that her daughter told investigators that she asked Petitioner to make the videos, and that Petitioner did not recall sending the videos to Hamby. [Id.]. Petitioner argues that it could not be proven beyond a reasonable doubt whether she or Joel sent the videos to Hamby because their personal computers were compromised. [Id.]. She further asserts that counsel advised her to admit to the distribution count, even though she had no criminal intent. [Id. at 28]. She asserts that this

prejudiced her because she could not make an informed decision as to whether to plead guilty and that her plea should be vacated so that she may "plea[d] anew."  [Id.].

Petitioner's contentions are without merit, as they are refuted by her own testimony during the plea hearing, where this Court meticulously went through the elements of the offenses, including the requirement that the acts be done knowingly, as well as the statutory range of punishment, including a maximum twenty-year sentence.  [See CR Doc. 94].  Petitioner, who is well educated and holds a master's degree, testified that she had reviewed and understood the plea agreement, she understood the elements of the offenses and the maximum penalties, no one had forced her to plead guilty, and she was pleading guilty because she had committed the offenses.  [See CR Doc. 68 at ¶¶ 73-77; CR Doc. 94].  She also testified that she had sufficient time to discuss possible defenses with her attorney and that she was satisfied with his services.  [CR Doc. 94 at 22-23].  Where a trial court properly advises a defendant of the potential sentence she faces and she indicates that she understands this, she cannot be prejudiced by any misinformation counsel allegedly provided to her.  United States v. Foster, 68 F.3d 86, 87 (4th Cir. 1995) (rejecting ineffective assistance claim where petitioner alleged that counsel had provided incorrect information regarding

his sentencing exposure). In light of Petitioner's sworn testimony at the Rule 11 hearing, her assertion that her plea was involuntary due to counsel's erroneous advice is without merit. See Lemaster, 403 F.3d at 221-22. Moreover, Petitioner reaffirmed her Rule 11 responses at sentencing. [CR Doc. 93 at 5-8]. Finally, Petitioner's assertion that she should be allowed to plead anew is insufficient to establish prejudice, since she does not state that but for counsel's advice she would have proceeded to trial. Nor would such an allegation be objectively reasonable given the evidence against her. See Fugit, 703 F.3d at 260; United States v. Santiago, 2015 WL 9288220 at **4-5.

### B. Petitioner's allegations of ineffective assistance of counsel at sentencing.

Petitioner raises eight grounds of ineffective assistance with respect to counsel's representation at sentencing. Specfically, she argues that her attorney: (1) failed to review, discuss, and explain the PSR to her before sentencing; (2) failed to file any meaningful objections to the PSR; (3) failed to properly prepare for sentencing by creating a theory of defense to mitigate punishment; (4) failed to move for a continuance to prepare for the testimony of the Government's witnesses; (5) failed to properly cross-examine Agent Wydra; (6) argue for mitigation of punishment; (7) failed to move for a downward departure based on psychological reports; and (8) failed to raise

a <u>Santobello</u> claim regarding specific performance of the plea agreement. [Doc. 1 at 5]. Petitioner argues that, although counsel briefly reviewed the PSR with her, she was confused by the Guidelines and did not understand that the conduct related to Count One could be used as relevant conduct even though Count One was dismissed. [Doc. 2 at 28-29]. She contends that counsel did not raise the relevant conduct issue and glossed over her objections at sentencing. [<u>Id.</u> at 29]. She asserts that counsel did not adequately cross-examine Agent Wydra, that most of his testimony was hearsay, and that it also contradicted Joel's and Hamby's statements. [<u>Id.</u>]. She contends that counsel should have sought a continuance to prepare adequately for cross-examination, as well as to allow co-counsel Jackson to be present at sentencing. [<u>Id.</u> at 29-30]. She argues that counsel failed to challenge the substantive reasonableness of her sentence after it was imposed. [<u>Id.</u> at 30]. She contends that these actions constituted deficient performance, which prejudiced her, although she does not state how. [<u>Id.</u> at 30].

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that she would have received a lower sentence. <u>See Royal v. Taylor</u>, 188 F.3d 239, 249 (4th Cir. 1999). Petitioner's assertions of

deficient performance are, again, belied by the record. At sentencing, she admitted to reviewing and understanding the PSR. Defense counsel filed voluminous objections to the PSR, as well as lengthy motions seeking a sentence below the Guidelines, and counsel submitted psychological reports to support these arguments. [See CR Docs. 71-74, 76]. At sentencing, counsel tried to minimize Petitioner's conduct and argued many grounds for imposing a sentence below the advisory range. Furthermore, counsel's failure to object to Wydra's testimony was not deficient performance, as Wydra's testimony — even if hearsay — was properly admitted. See United States v. Powell, 650 F.3d 388, 391-93 (4th Cir. 2011) (recognizing Confrontation Clause does not apply at sentencing where the court is free to consider a wide range of evidence); United States v. Bowman, 926 F.2d 380, 381 (4th Cir. 1991) (holding that a sentencing judge "may give weight to any reliable source of information," including even uncorroborated hearsay); United States v. Padron-Yanez, 433 F. App'x 189, 190-91 (4th Cir. 2011) (rejecting Confrontation Clause argument that the district court should not have permitted the government to present an agent's hearsay testimony at sentencing). Additionally, Petitioner does not show what additional cross-examination would have revealed or what co-counsel Jackson's presence at

sentencing would have changed.[1]  Finally, as the Fourth Circuit recognized on appeal, consideration of the conduct underlying the dismissed count was proper.  See Tipton, 581 F. App'x at 188-89.  Thus, Petitioner has not shown deficient performance where counsel vigorously advocated on her behalf at sentencing.

Even if she could show deficient performance, Petitioner cannot show prejudice.  This Court carefully considered all of defense counsel's submissions and arguments, but declined to impose a sentence below the Guidelines range because the Court was troubled by Petitioner's manipulation of her daughter, the violation of her trust as a parent, and Petitioner's failure to appreciate the criminality of her actions.  [CR Doc. 93 at 84-85].  A within guidelines sentence is presumptively reasonable.[2]  See Rita v. United States, 551 U.S. 338, 347 (2007).  Petitioner has not shown that but for counsel's allegedly deficient performance, there is a reasonable probability that she would have received a lower sentence.  See Royal, 188

_____

[1] It is noted that Jackson was Petitioner's attorney in her domestic matter, and that he had no federal criminal experience since the adoption of the Sentencing Guidelines.

[2] Even though the sentence was within the guidelines range, and in fact near the low end of the guidelines range, the Court found that the Guidelines, as applied to this case, provided little guidance.  The Court then provided a lengthy explanation of how the sentence given was supported by the applicable § 3553(a) factors.  [CR Doc. 93 at 82-85].

F.3d at 249. Accordingly, her claims of ineffective assistance of counsel at sentencing are without merit.

## C. Petitioner's allegations of ineffective assistance of appellate counsel.

Petitioner raises three grounds of ineffective assistance by appellate counsel. [Doc. 1 at 6]. She contends that appellate counsel: (1) failed to communicate with her regarding the appeal and the issues to be raised; (2) failed to allow her to participate in the appeal; and (3) failed to raise stronger issues. [Id.]. She argues that there was a lack of communication with counsel Jackson during the appeal process. [Doc. 2 at 30]. Petitioner also asserts that she wanted to raise the Guidelines objections, argue that consideration of the dismissed count as relevant conduct was improper, and assert that, based on the facts and circumstances of the case, her sentence was substantively unreasonable. [Id. at 30-31]. She contends that counsel was deficient for failing to raise these issues and for raising weaker issues couched as prosecutorial misconduct. [Id. at 32].

Courts should ordinarily only find ineffective assistance for failure to raise claims on appeal when "ignored issues are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259, 288 (2000) (internal citation and quotation omitted). Appellate counsel is not required to assert all non-frivolous issues on appeal. Griffin v. Aiken, 775 F.2d 1226, 1235 (4th Cir.

1985).  Rather, "winnowing out weaker arguments on appeal and focusing" on more promising issues "is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotation marks omitted).  Thus, "[a] decision with respect to an appeal is entitled to the same presumption that protects sound trial strategy."  Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).  Additionally, the petitioner still bears the burden to show that there is a reasonable probability that, but for counsel's failure to raise an issue on appeal, the result of the proceeding would have been different, i.e., he would have prevailed on appeal.  See Robbins, 528 U.S. at 285-86.

Here, all of the arguments that Petitioner asserts that counsel should have raised on appeal are barred by the appeal waiver provision in her plea agreement.  The Fourth Circuit has already held that this waiver is valid and bars Petitioner from challenging the reasonableness of her sentence. Tipton, 581 F. App'x at 189.  Accordingly, she can show neither deficient performance, nor prejudice from counsel's failure to raise these issues.

In sum, because Petitioner has not shown deficient performance or prejudice pre-plea, at sentencing, or on appeal, her claims of ineffective assistance of counsel are denied.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that Petitioner is not entitled to relief.

The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right.  See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)).  Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right.  Slack v. McDaniel, 529 U.S. at 484-85.  As a result, the Court declines to issue a certificate of appealability.  See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED**.

Signed: April 5, 2016

Martin Reidinger
United States District Judge